UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALIX GIERKE,<br><br>                        Plaintiff,<br>      v.<br><br>ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>                       Defendant. | CASE NO. C19-0071JLR<br><br>ORDER GRANTING MOTION FOR OREGON CHOICE OF LAW |

## I. INTRODUCTION

Before the court is Defendant Allstate Property and Casualty Insurance Company's ("Allstate") motion asking the court to recognize that Oregon law controls the interpretation of the insurance policy at issue and the claims asserted in Plaintiff Alix Gierke's complaint. (*See* Mot. (Dkt. # 14); *see also* Compl. (Dkt. # 1-2).) Ms. Gierke opposes the motion. (*See* Resp. (Dkt. # 17).) The court has considered the motion, all submissions filed in support of and in opposition to the motion, the relevant portions of

the record, and the applicable law. Being fully advised,[1] the court GRANTS the motion and applies Oregon law to this case.

## II. BACKGROUND

The insurance policy at issue in this case is Allstate Policy No. 987990420 ("the Policy"), which Allstate issued to Ms. Gierke. (Wisbey Decl. (Dkt. # 15) ¶ 2, Ex. A (attaching a copy of the policy).) The Policy period is from April 12, 2017, through October 12, 2017. (*Id.* at 11.)[2] The Policy consists of: (1) Oregon Allstate Fire and Casualty Insurance Company Auto Insurance Policy – AFA18; (2) Oregon Amendatory Endorsement – AU14223-6; and (3) Claim Satisfaction Guarantee Amendatory Endorsement – AP4878. (*Id.* at 14.) The Policy refers to Oregon and Oregon law in numerous provisions throughout.[3]

The Policy contains the following choice-of-law provision:

**What Law Will Apply**
This policy is issued in accordance with the laws of Oregon and covers property or risks principally located in Oregon. Subject to the following

---

[1] Neither party requests oral argument (*see* Mot. at 1; Resp. at 1), and the court does not consider oral argument to be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] When citing to specific pages of any document in the record, the court refers to the page numbers generated by the court's electronic filing system.

[3] (*See, e.g.*, Wisbey Decl. ¶ 2, Ex. A at 15 (referring to "Oregon required communications" and the Oregon Financial Responsibility Law), 22 (indicating that lawsuits related to the Policy must be brought in Oregon or where an occurrence for which coverage applies happens), 24 (referring to the Oregon Financial Responsibility Law), 27 (excluding certain coverages for injuries to certain pedestrians which occur outside of Oregon and excluding certain coverages related to vehicles other than private passenger motor vehicles as defined by Oregon law), 28 (referring repeatedly to Or. Rev. Stat. 742.536), 29 (referring to Or. Rev. Stat. 656.248), 34 (referring to the Oregon Financial Responsibility Law), 43-47 (attaching the Oregon Amendatory Endorsement AU14223-6).

> paragraph, any and all claims or disputes in any way related to this policy shall be governed by the laws of Oregon.
>
> If a covered loss to the **auto**, a covered **auto** accident, or any other occurrence for which coverage applies under this policy happens outside Oregon, claims or disputes regarding that covered loss to the **auto**, covered **auto** accident, or other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to the **auto**, covered **auto** accident, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

(*Id.* at 21-22.)

When Allstate initially issued automobile insurance to Ms. Gierke, she lived in Oregon. (*See* Gierke Decl. (Dkt. ## 18 (sealed), 22 (redacted)) ¶ 2.) In 2015, Ms. Gierke relocated to Seattle, Washington, and obtained a Washington State driver's license that same year. (*Id.* ¶¶ 3, 5.) She also began paying taxes as a Washington State resident in 2015. (*Id.* ¶ 4.)

On April 21, 2017, during an exchange of email correspondence, Ms. Gierke informed her Allstate insurance agent that she no longer had an Oregon driver's license but rather a Washington driver's license. (*Id.* ¶ 7, Ex. 3 at 14.) Specifically, on April 21, 2017, Ms. Gierke's insurance agent wrote to her during the course of an email exchange: "Underwriting didn't process the renewal. I am working on getting it corrected. Just to verify, do you still have an Oregon license?" On the same day, Ms. Gierke responded: "Hi there, Thank you! Washington. I've included the photo – does that work?" (Gierke Decl. ¶ 7, Ex. 3 at 14.) Although Ms. Gierke indicates both in the referenced email exchange and in her declaration that she attached a copy of her Washington driver's license to the email, there is no indication in Exhibit 3 to her declaration—other than the

quoted statement in her email—that the email chain contains an attachment of any sort. (*See id.* ¶ 7, Ex. 3.) Indeed, the Policy's amended declarations page recites that Allstate's "[i]nformation as of June 15, 2017," was that Ms. Gierke's mailing address remained in Beaverton, Oregon. (Wisby Decl. (Dkt. # 15) ¶ 2, Ex. A at 11.)

On June 4, 2017, Ms. Gierke was driving her automobile near Seattle, Washington, when another driver rear-ended her vehicle causing damage. (*See* Gierke Decl. ¶¶ 1, 8; Carter Decl. (Dkt. ## 19 (sealed), 21 (redacted)) ¶ 2, Ex. 1 (attaching a copy of the police report).) The police report of the accident indicates that, despite moving to Seattle in 2015, Ms. Gierke never changed her vehicle's license from Oregon to Washington. (*See* Carter Decl. ¶ 2, Ex. 1 at 3.) Thus, at the time of the accident, the insured vehicle continued to be licensed in Oregon. (*See* Wisbey Decl. ¶ 2, Ex. A (attaching a copy of the Policy identifying the insured vehicle).)

Ms. Gierke alleges that on September 27, 2018, the liability carrier for the individual who rear-ended her vehicle offered the full liability policy limits of his insurance policy to resolve her claim. (Compl. ¶ 4.6.) She further alleges that this policy limits settlement failed to make her whole. (*Id.* ¶ 4.7.) Accordingly, she demanded that Allstate pay her the limits of the Underinsured Motorist ("UIM") coverage provided in the Policy. (*Id.* ¶ 4.10.) Ms. Gierke alleges that Allstate denied her claim in its entirety. (*See id.* ¶ 4.11.)

On January 2, 2019, Ms. Gierke filed suit against Allstate in state court. (*See generally id.*; *see also* NOR (Dkt. # 1) ¶ 1.) Ms. Gierke alleges breach of the UIM coverage provided in the Policy, breach of duty of good faith and fair dealing (also

known as a "bad faith" claim), and violation of the Insurance Fair Conduct Act ("IFCA"), RCW 48.30.010, *et seq.* (*See* Compl. ¶¶ 5.2-5.4.) On January 15, Allstate removed the action to federal court on grounds of diversity jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1441. (*See* NOR ¶¶ 11-13.) Allstate now moves for a declaration that Oregon law governs Ms. Gierke's claims. (*See generally* Mot.)

### III. ANALYSIS

Allstate argues that the court should apply Oregon law and relies upon the Policy's choice-of-law provision in asserting that argument. (*See id.* at 3.) Because Allstate removed this action to the Western District of Washington based on diversity jurisdiction, the court must apply Washington's choice-of-law rules to determine whether to enforce the Policy's choice-of-law provision. *See Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) ("When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law."). In Washington, courts determine the choice of law by assessing: (1) whether there is an actual conflict of laws between the two proposed states, and if so, (2) whether the choice-of-law provision in the relevant agreement is effective. *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1120 (Wash. 2007). Washington courts will enforce a choice-of-law provision unless: (1) "without the provision, Washington law would apply" under section 188 of the Restatement; (2) "the chosen state's law violates a fundamental public policy of Washington"; and (3) "Washington's interest in the determination of the issue materially outweighs the chosen state's interest." *McKee v. AT&T Corp.*, 191 P.3d 845, 851 (Wash.

//

2008). Washington courts enforce a choice-of-law provision unless all three of these conditions are met.[4] *Id.*

**A.     An Actual Conflict of Laws**

Ms. Gierke argues that Washington law applies because there is no actual conflict between Washington and Oregon law with respect to her claims. (Resp. at 6.) The court disagrees, specifically with respect to Ms. Gierke's claims for bad faith and for violation of IFCA. The court discusses each claim in turn.

Under Washington law, a common law claim for bad-faith handling of an insurance claim sounds in tort. *Safeco Ins. Co. of Am. v. Butler*, 823 P.2d 499, 503 (Wash. 1992). To succeed on such a claim in Washington, the insured must show that the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded. *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003). Because the claim sounds in tort, an insurer can act in bad faith even where coverage is later determined to be unavailable. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008); *Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 937 (Wash. 1998). Washington recognizes a claim for "bad faith" both in third-party and first-party insurance cases. *Coventry*, 961 P.2d at 938. The insured, however, must prove actual harm and is limited to those damages proximately caused by the insurer's bad faith. *St. Paul Fire & Marine Ins. Co.*, 196 P.3d at 669. Nevertheless, because bad faith is a tort in Washington, an insured is not limited to economic damages, but may recover both

---

[4] There are additional exceptions to the general rule that are not relevant here. *See McKee*, 191 P.3d at 851 n.6.

financial and emotional damages. *Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1308 (W.D. Wash. 2013) (citing *Anderson v. State Farm Mut. Ins. Co.*, 2 P.3d 1029, 1035 (Wash. App. 2000)).

In contrast to Washington's law, recovery on an insurance first-party bad faith claim in Oregon "sounds in contract." *Brockway v. Allstate Prop. & Cas. Ins. Co.*, 391 P.3d 871, 879 (Or. Ct. App. 2017). In other words, a claim for breach of the duty of good faith is a claim for breach of the insurance contract under Oregon law. *Id.* Further, Oregon courts "limit[] the damages to be awarded for such a claim . . . to breach of contract damages." *Pearson v. Provident Life & Acc. Ins. Co.*, 834 F. Supp. 2d 1199, 1206 (D. Or. 2004) (citing *Farris v. U.S. Fid. & Guar. Co.*, 587 P.2d 1015 (Or. 1978)). Punitive damages and damages for metal distress are disallowed. *See Farris*, 587 P.2d at 1017. Indeed, "Oregon courts . . . limit[] tort claims against insurers to those scenarios where the insurer accept[s] . . . responsibility for defending its insured and then act[s] against the best interests of the insured." *Allstate Ins. Co. v. Breeden*, No. CIV. 01-1686-AS, 2007 WL 4480759, at *7 (D. Or. Dec. 17, 2007) (citing *Strader v. Grange Mut. Ins. Co.*, 39 P.3d 903, 906 (Or. Ct. App. 2002)). Punitive damages are only permitted when the bad faith action against the insurer sounds in tort. *See Green v. State Farm Fire & Cas. Co.*, 667 F.2d 22, 24 (9th Cir. 1982). Thus, the court concludes that there are actual conflicts between Washington and Oregon law concerning Ms. Gierke's claim for bad faith.

In Washington, IFCA creates a separate cause of action for an insurer's unreasonable denial of an insurance claim. *See* RCW 48.30.015(1). IFCA provides for

the possible recovery of attorney's fees and treble damages. RCW 48.30.015(2), (3). IFCA also provides a list of specific unfair claims practices contained within the Washington Administrative Code that constitute a violation of the statute for purposes of awarding attorney's fees or treble damages. RCW 48.30.015(5). Although Oregon has a statute that sets forth specific unfair claims practices, *see* ORS § 746.230, unlike IFCA, Oregon's statute does not provide for a private right of action, *see Clinicient, Inc. v. Sentinel Ins. Co., Ltd.*, No. 3:16-CV-478-PK, 2016 WL 8470106, at *5 (D. Or. Nov. 28, 2016), *report and recommendation adopted*, No. 3:16-CV-478-PK, 2017 WL 991295 (D. Or. Mar. 14, 2017) ("Oregon law does not provide for any private cause of action in tort for the violation of the provisions of [ORS] 746.230(1)."); *Emp'r's Fire Ins. Co. v. Love It Ice Cream Co.*, 670 P.2d 160, 164 (Or. Ct. App. 1983) ("[T]he violation of ORS 746.230(1)(f), which requires insurers to settle claims promptly and in good faith where their liability is reasonably clear, does not give rise to a tort action"). Thus, the court concludes that there is an actual conflict between Washington and Oregon law concerning Ms. Gierke's statutory claim as well.

**B.    Effectiveness of the Choice-of-Law Clause**

Because the court concludes that there is an actual conflict between Oregon and Washington law, the court next evaluates whether the choice-of-law clause is effective. *See Erwin*, 167 P.3d at 1120. The court will enforce the provision unless three conditions are present. *McKee*, 191 P.3d at 851. The first of those conditions is whether "without the provision, Washington law would apply" under section 188 of the Restatement (Second) of Conflicts of Laws. *See id.*; *see also Dairyland Ins. Co. v. State Farm Mut.*

*Auto. Ins. Co.*, 701 P.2d 806, 808 (Wash. Ct. App. 1985) (concluding that section 188 of the Restatement, which describes contract choice of law factors, is the correct section of the Restatement to apply to choice of law issues involving insurance contracts, rather than section 145, which pertains to tort choice of law factors); *W. Am. Ins. Co. v. MacDonald*, 841 P.2d 1313, 1316-17 (Wash. Ct. App. 1992) (ruling that the forum's contract choice of law rules, rather than its tort choice of law rules, are applicable in an action to determine an insured's right to recover UIM benefits). "In determining which state's law . . . appl[ies] under section 188 of the Restatement, Washington courts weigh the relative importance of: (1) the place of contracting; (2) the place of contract negotiation; (3) the place of contract performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, or place of incorporation of the parties." *PAR Elec. Contractors, Inc. v. BlueLine Rental LLC*, No. 2:16-CV-0246-TOR, 2017 WL 374477, at *3 (E.D. Wash. Jan. 25, 2017), *reconsideration denied*, No. 2:16-CV-0246-TOR, 2017 WL 2727901 (E.D. Wash. Mar. 17, 2017) (citing *McKee,* 191 P.3d at 852).

The analysis of the Washington Court of Appeals in *MacDonald* is relevant to the court's anlysis here. Applying the section 188 factors, the *MacDonald* court held that California, rather than Washington law, applied to determine whether the insureds were entitled to UIM benefits under their California insurance policy. 841 P.2d at 1317-18. Although the accident occurred in Washington, the insureds' relationship with their insurance company "was initially formed" in California, the policy referred to California law and the California Insurance Code, the insured vehicle was licensed in California, and the insured driver held a California driver's license. *Id.* at 317. The court stated that

"[a]lthough none of these facts individually are necessarily dispositive, taken together they indicate that the application of the contract's terms, and of California's approach, would not violate the insureds' expectations." *Id.* The insureds argued that Washington law should control because the insureds had spent six months of 1988 in Washington and had resided in Washington from March 1989 until their deaths in August 1989. *Id.* at 318. The *MacDonald* court, however, concluded that these facts were "not sufficiently weighty" to alter the court's choice of law analysis; nor were the facts that the insureds signed their respective wills and a community property agreement in Washington and sent their renewal premiums to the insurer from Washington. *Id.* The *MacDonald* court stated that it was "reluctant to impose Washington law on [the UIM policy at issue] absent any indication in the record that [the insurance company] received notice that the [insureds] had changed their residence." *Id.*

In opposing Allstate's motion and arguing for the application of Washington law, Ms. Gierke relies primarily on her Washington residency at the time of the accident. (*See* Resp. at 7-8.) As noted above, the *MacDonald* court implicitly indicates in *dicta* that, if the insurance company there had received notice of the insured's change of residency, this fact might have altered its choice of law analysis from California to Washington. *See Macdonald*, 814 P.2d at 318 (noting that the court was reluctant to apply Washington law absent any evidence that the insurer had received notice of the insured's change of residency to Washington). And indeed, as also noted above, Ms. Gieke informed Allstate on April 21, 2017, that she no longer had an Oregon driver's license, but was now licensed to drive in Washington. (*See* Gierke Decl. ¶ 7, Ex. 3 at 14.)

However, when actually confronted with the issue, the fact that an insurer was on notice that both the primary driver and the insured vehicle would be located principally in Washington did not convince the court in *Cowles v. State Farm Mutual Automobile Insurance Co.*, No. 48888-1-I, 2002 WL 1316816, at *3 (Wash. Ct. App. 2002), to choose Washington law over Colorado law.[5] In *Cowles*, the primary driver was a student attending college in Washington on a full-time basis and the insurer was on notice that both the primary driver and the insured vehicle would be "principally located in Washington". *Id.* The *Cowles* court recognized that the location of the insured risk was a significant factor. *Id.* Nevertheless, the court balanced this factor against other relevant factors and still concluded that Colorado—not Washington—law should apply. *Id.* The court noted that the relationship of the parties originated in Colorado, where the policy was originally executed. *Id.* Further, the policy made explicit reference to Colorado law and the vehicle continued to be licensed in Colorado. *Id.* Further, the court noted that the insurer had a legitimate interest in limiting the scope of its liability to that imposed by Colorado law. *Id.* (citing *Dairyland Ins. Co.*, 701 P.2d at 809). Thus, the court declined to apply Washington law and applied Colorado law to the dispute instead. *Id.*

//

---

[5] Federal courts may consider unpublished state court decisions as persuasive authority. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 n.3 (9th Cir. 2015); *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167 n.6 (9th Cir. 2011); *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value"); *McSherry v. Block*, 880 F.2d 1049, 1052 n.2 (9th Cir. 1989) ("While the depublication order may constitute a factor as to whether we are bound by the Appellate Department's construction, we do not necessarily find that factor decisive.").

The court comes to a similar conclusion here. Although the evidence indicates that Ms. Gierke informed Allstate that she had obtained a Washington driver's license, and one could infer from this fact that she was also a Washington resident, the evidence is not as clear that she expressly informed Allstate of her address in Washington State. As noted above, although she recites in both the email string with her insurance agent and in her declaration that she attached a copy of her Washington license to her email, the email string itself reveals no indication of any such attachment. (*See* Gierke Decl. ¶ 7, Ex. 3.) Further, the Policy's declarations page recites that Allstate's "[i]nformation as of June 15, 2017," was that Ms. Gierke had a Beaverton, Oregon mailing address. (Wisbey Decl. ¶ 2, Ex. A at 11.) Thus, the evidence that Ms. Gierke informed Allstate of her new address is not as clear as Ms. Gierke argues. Further, despite now asserting that she transferred her residency to Washington in 2015, Ms. Gierke retained an Oregon license for the insured vehicle. (*See* Carter Decl. ¶ 2, Ex. 1 at 3 (attaching copy of the police report of the accident, which lists an Oregon license plate for Ms. Gierke's vehicle).) Given these facts, and given that the parties' relationship originated in Oregon, the Policy refers numerous times to Oregon and Oregon law, and Ms. Gierke's vehicle remained licensed in Oregon, the court concludes that, under section 188 of the Restatement, Oregon and not Washington law should apply. *See Cowles*, 2002 WL 1316816, at *3. Further tipping the scales in Allstate's favor is Allstate's legitimate interest in limiting the scope of its liability to that imposed by Oregon law. *See id.*; *see also Dairyland Ins. Co.*, 701 P.2d at 809 ("Washington recognizes that an insurance company has a 'legitimate interest . . . in preventing an increase in the quantum of risk without a corresponding

increase in the premium . . . .'") (quoting *Grange Ins. Ass'n v. MacKenzie*, 694 P.2d 1087, 1089 (Wash. 1985)).

Because Washington law would not apply under section 188 of the Restatement (Second) of Conflicts of Laws, Washington's choice-of-law doctrine indicates that the court should enforce the Policy's choice-of-law provision. Because the first condition the court evaluates in determining whether a choice-of-law clause is effective is not met, the court need not consider the other two. *See McKee*, 191 P.3d at 851 (holding that the court will enforce a choice-of-law provision unless all three conditions are present).

**C.  Applying the Choice-of-Law Provision**

Allstate argues that the court need only consider the first clause of the choice-of-law provision which calls for the application of Oregon law. (*See* Mot. at 3-4.) However, Allstate provides no persuasive argument as to why the second clause of the provision does not apply. (*See id.*) As noted above, the second clause provides:

> If a covered loss to the auto, a covered auto accident, or any other occurrence for which coverage applies under this policy happens outside Oregon, claims or disputes regarding that covered loss to the auto, covered auto accident, or other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to the auto, covered auto accident, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

(Wisby Decl. ¶ 2, Ex. A at 22.) Under the plain language of this provision, because a covered auto accident happened outside Oregon, Ms. Gierke's claims or disputes regarding that covered auto accident may be covered by the laws of Washington only if Washington law would apply in the absence of the choice of law provision. The second clause of the choice-of-law provision is plainly applicable here. However, this is the

exact analysis in which the court just engage in the previous section. *See supra* § III.B. Applying that same analysis here, the court concludes that Washington law would not apply in the absence of Allstate's choice of law provision, and therefore, the court will apply Oregon law to Ms. Gierke's claims. Accordingly, the court GRANTS Allstate's motion.

## IV. CONCLUSION

Based on the foregoing analysis, the court GRANTS Allstate's motion for choice of law and applies Oregon law to this insurance dispute (Dkt. # 14).

Dated this 1st day of October, 2019.

JAMES L. ROBART
United States District Judge